## Page's Adm'r v. Scott.

(Decided Nov. 1, 1932.)

ARTHUR C. GUNTHER and BERNARD O. KEARNEY for appellant.

LEROY CURTIS and EDWARD HOGAN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In this action by the administrator of Clarence M. Page, Sr., against O. M. Scott, to recover damages for his death, the jury returned a verdict in favor of Scott, and the administrator appeals.

Briefly stated, the facts are these: About 6 o'clock p. m. on October 19, 1930, the decedent, Clarence M.

Page, Sr., a carpenter about 55 years of age, was walking south on the west side of the Dixie highway, and appellee, accompanied by his wife and two small children, was driving a Studebaker car in the same direction. At a point just beyond Bernheim's lane the car struck Page, and he died from his injuries. At that point the paved portion of the highway is about 19 feet wide, and extending beyond the paved portion on the west there was macadam several feet wide. L. E. Maddox, who was driving about 75 feet behind appellee, saw appellee's car swerve about 5 feet to the left, and then run about 50 feet before it was brought to a stop. After the accident, the car pulled over toward the right. A car may have passed going north toward the city, but he did not notice it. There was further evidence that the righthand headlight on appellee's car was mashed in, and that pieces of glass were found along the highway. George P. Whipple testified that with a high light on a machine he would say that a man could see about 75 feet ahead of him. After introducing photographs and other evidence showing the physical conditions at the place of the accident, appellee was called by appellant, and, after testifying that with the lights on his automobile he could see possibly for a distance of 75 or 100 feet, he admitted that in his deposition formerly taken, he, in answer to the question, stated, "I judge 30 feet."

On taking the stand in his own behalf, appellee testified in substance as follows: He had been to his brother-in-law's, and was returning home. On coming up Western Parkway to the Eighteenth Street road he made a boulevard stop. Turning south on Eighteenth Street road he went to Bernheim's lane. The street car was coming, and he stopped still and waited for the street car to cross. He sounded his horn at the church, which was only a short distance away. At that time an automobile was meeting him. It had very bright lights, and he slowed down when the lights blinded him. Prior to that time he had been going about 25 miles an hour, and slowed down to about 18 or 20 miles an hour. At that time both of his own lights were burning. He had regulation lights on his machine, and there was nothing wrong or defective with the lights. He had driven other machines, and the lights on his car enabled him to see as far as the lights on other cars. After the car going north passed him, he saw Page on the edge of

the road. He was then driving about 2 feet from the western edge of the paved portion of the road. Page was then 8 or 10 feet away. Page cut right square across the road in front of him, and took about three steps. He swerved to the left and tried to miss him, but Page was so close that he could not miss him. He judged that he swerved over from 5 to 7 feet, but then pulled back to the righthand side of the road and stopped after going about 50 feet. He practically stopped when he made the swerve, and then practically stopped when he reached the south side of the road, a distance of about 19 feet. When he first saw Page, he was on the edge of the walk. If he had continued to walk where he was, there would have been no accident. His right headlight was broken, and there was glass lying about 3 feet over on the paved road. He went back, picked up Mr. Page, and held him in his arms until Mr. Maddox came. Glenn J. Patton, service manager of the Studebaker Company, examined appellee's car on October 21st. The right light was damaged, and the left was apparently O. K. He could not say whether the lights were of sufficient strength to reveal a substantial object 200 feet ahead. He checked the lights to see that they were properly lined. The left light was all right when the car came in, and the right was all right temporarily. He got a new light and put a bulb in it.

Appellant's principal contention is that the verdict is flagrantly against the evidence. In support of this position, it is argued that appellee's statements that he was blinded by the glare of the lights from the automobile going north, and that immediately prior to striking decedent the decedent suddenly stepped in front of his machine, are inconsistent; that Maddox, who was behind appellee, testified that he observed no car going north; that the position of appellee's machine after the accident shows that he was driving at an excessive rate of speed; and that appellee's own evidence shows that the lights on his machine were not of sufficient power clearly to reveal substantial objects at least 200 feet ahead, as required by section 2739g-24, Kentucky Statutes. We do not find appellee's account of the accident inherently improbable, or his statements necessarily inconsistent. Pedestrians do walk along the highway, and sometimes leave a place of safety and attempt to cross in front of approaching machines. The

driver of a machine may be blinded by the lights of an approaching car, and then see a pedestrian after the glare has been removed. Maddox's evidence that he observed no car going north simply made an issue. It does not necessarily follow that, because appellee's car was brought to a stop 50 feet beyond the place of the accident, his car was going at an excessive rate of speed. Fairly considered, appellee's evidence is subject to the construction that, when he swerved, his car practically stopped, and he then pulled his car over to the right to get out of the way of the traffic.

The statute provides that no automobile shall be sold in the commonwealth unless the light projected by the headlights meets the requirements of the statute at the time of the sale. Section 2739g-24, Kentucky Statutes. Appellee's automobile had been run only a short time. Appellee testified that he had regulation lights on the machine, and there was nothing wrong or defective with the lights. The service manager of the Studebaker Company, who examined appellee's car, checked the lights on the car and said that the left light was all right, and the right light was all right apparently. In view of this evidence, and of the fact that appellee made no test of the lights, but was merely estimating the distance, we do not regard his first statement that he judged that he could see about 30 feet ahead, or his last statement that he judged that he could see from 75 to 100 feet ahead as being of such overwhelming weight to overturn the verdict of the jury, which, for aught we know, may have been predicated on contributory negligence.

Taking up the question of contributory negligence, the evidence presented the following situation: Immediately after the passing of the car going north, the decedent attempted to cross over in front of appellee's car. While he had the undoubted right to walk along the highway, it was his duty to use ordinary care to learn of the approach of the car, and keep out of its way. As he stepped in the pathway of the approaching car, the jury had a right to conclude that he took no steps to learn of its approach, and keep out of its way, and was therefore guilty of contributory negligence.

On the whole, we are constrained to hold that the verdict is not flagrantly against the evidence.

The further point is made that the court erred in not holding as a matter of law that the decedent was guilty of contributory negligence. What we have said on this phase of the case is sufficient to dispose of that contention. Aside from this, the effect of the contention is that the court erred in submitting the question of contributory negligence, but, as the giving of the instruction, which was not objected to, was not and could not have been assigned as a ground for a new trial, the error, if any, is not reviewable on appeal. Greer v. Farrar, 223 Ky. 564, 4 S. W. (2d) 367.

Judgment affirmed.